

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Matthew DellaBetta*
*Assistant United States Attorney*
*Matthew.DellaBetta@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

*DIRECT: 410-209-4857*
*MAIN: 410-209-4800*

November 8, 2018

Richard Bardos, Esq.
**VIA EMAIL**

_____ **FILED** _____ **ENTERED**
_____ **LOGGED** _____ PROCEIVED

**NOV 2 9 2018**

AI BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**DEPUTY**

NM

Re: <u>United States v. Rodney Addison</u>
Criminal No. ELH-17-475 (D. Md.)

Dear Counsel:

  This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Rodney Addison (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by November 19, 2018, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

  1.  The Defendant agrees to plead guilty to Count One of the Information, which charges the Defendant with Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 846. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

Elements of the Offense

  2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That beginning in or about January 2012 through on or about October 24, 2017, in the District of Maryland,

  (1) There existed an agreement between two or more persons to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance;

  (2) The Defendant knew of this agreement; and

  (3) The Defendant knowingly and voluntarily participated in or became a part of this agreement.

1

Penalties

3.     The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|-------|---------|--------------------------|-------------------|------------------------|----------|---------------------|
| 1 | 21 U.S.C. § 846 | N/A | 20 years | life | $1 million | $100 |

a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

3

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil
rights and may be subject to deportation or other loss of immigration status, including possible
denaturalization.  The Defendant recognizes that if the Defendant is not a citizen of the United
States, or is a naturalized citizen, pleading guilty may have consequences with respect to the
Defendant's immigration status.  Under federal law, conviction for a broad range of crimes can
lead to adverse immigration consequences, including automatic removal from the United States.
Removal and other immigration consequences are the subject of a separate proceeding, however,
and the Defendant understands that no one, including the Defendant's attorney or the Court, can
predict with certainty the effect of a conviction on immigration status.  The Defendant is not
relying on any promise or belief about the immigration consequences of pleading guilty.  The
Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential
immigration consequences.

Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines
range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform
Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28
U.S.C.     §§ 991 through 998. The Defendant further understands that the Court will impose a
sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the
advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth
in Attachment A, which is incorporated by reference herein.  This Office and the Defendant further
agree to the following applicable sentencing guideline factors:

   a.  The base offense level for Count One is 24 pursuant to United States Sentencing
       Guidelines ("U.S.S.G.") § 2D1.1(c)(8).

   b.  This Office does not oppose a two-level reduction in the Defendant's adjusted offense
       level, based upon the Defendant's apparent prompt recognition and affirmative
       acceptance of personal responsibility for his criminal conduct pursuant to U.S.S.G. §
       3E1.1(a). This Office also agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b)
       for an additional one-level decrease in recognition of the Defendant's timely
       notification of his intention to plead guilty.

   **c.  Therefore, the total offense level is 21.**

7.     There is no agreement as to the Defendant's criminal history and the Defendant
understands that the Defendant's criminal history could alter the Defendant's offense level.
Specifically, the Defendant understands that the Defendant's criminal history could alter the final
offense level if the Defendant is determined to be a career offender or if the instant offense was a
part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the
Defendant's income. The Defendant agrees the Defendant will not raise any argument that any
specific prior conviction is not a predicate for a career offender designation under U.S.S.G.

4

§ 4B1.1.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11(c)(1)(C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)a.(C) that a sentence of **84 months (7 years)** is the appropriate disposition in this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release, restitution, or fine, or to set any lawful conditions of probation or supervised release. If the Court rejects this plea agreement, *either* party may elect to declare the agreement void. Should the Defendant elect to do so, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

10. The parties also agree that a sentence of **84 months (7 years)** is a reasonable and appropriate sentence, taking into consideration the nature and circumstances of the offense, and the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a).

## Obligations of the Parties

11. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

(i)     The Defendant reserves the right to appeal the sentence of imprisonment if the total term of imprisonment exceeds 84 months;

(ii)    This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than 84 months.

c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

<u>Defendant's Conduct Prior to Sentencing and Breach</u>

13.     a.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea.   The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.  In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

<u>Court Not a Party</u>

14.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

15.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.


If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____
Matthew DellaBetta
Assistant United States Attorney


I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_11/29/18_____          _____
Date                             Rodney Addison


I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_11/29/18_____          _____
Date                             Richard Bardos, Esq.

7

## ATTACHMENT A

### STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

From at least January 2012 through October 24, 2017, a drug trafficking organization ("DTO") controlled and operated an open air drug market at 1100 North Montford Avenue in Baltimore, Maryland. The DTO distributed large quantities of heroin on a daily basis. From multiple undercover purchases of heroin, law enforcement seizures of heroin, lawful interceptions of wiretap communications amongst DTO members, and interviews with witnesses, investigators determined that the DTO sold thousands of dollars in heroin on a weekly basis.

From beginning in at least July 1, 2017 and continuing through August 1, 2017, the Defendant, participated in the DTO as a street level drug distributor. During this period, the Defendant knowingly agreed with other members of the DTO to distribute heroin and cocaine. On a daily basis, the Defendant conducted street-level drug sales to drug buyers. Over the course of the Defendant's participation in the conspiracy, it was reasonably foreseeable to the Defendant that the DTO distributed over 100 grams of heroin, but less than 400 grams of heroin and a detectable amount of cocaine base.

On or about August 1, 2017, the Defendant was intercepted during a wiretap arranging a drug sale of heroin and cocaine with another member of the DTO. The Defendant later met with the prospective buyers and began to engage in the drug sale with a Baltimore City Police Department officer on patrol observed the exchange. The Defendant and buyers were stopped. The officer recovered 14 gel capsules of heroin and 17 vials of cocaine from the Defendant. The Defendant possessed these controlled substances with the intent to distribute them.

SO STIPULATED:

Matthew DellaBetta
Assistant United States Attorney

DATED:

Rodney Addison
Defendant

8

DATED:

Richard Bardos, Esq.
Counsel for Defendant

9